CHUNN v. LONDON & LANCASHIRE FIRE INSURANCE COMPANY.

Opinion delivered December 7, 1914.

1. APPEAL AND ERROR—CONSOLIDATION OF CAUSES—EFFECT OF VERDICT ON SEPARATE ISSUES.—Plaintiff brought two actions against defendant insurance company, on two policies of insurance for the loss by fire of her house and furniture. The causes were consolidated, and a verdict rendered against the defendant for the loss on the house, and for the loss of furniture. The trial court granted defendant's motion for a new trial on the issue of the loss of the house. On the second trial there was a verdict for the insurance

company. *Held,* on the second trial there was no claim or issue as to the loss of plaintiff's furniture, that matter having been adjudicated at the former trial.

2. EVIDENCE—HEARSAY—ADMISSIBILITY.—In an action to recover for a fire loss on a policy of insurance, testimony of witnesses as to statements made to them by one G., who was also a witness, detailing conversations between G. and plaintiff, is inadmissible, being hearsay.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; reversed.

STATEMENT BY THE COURT.

Mrs. Annie L. Chunn brought suit against the insurance company for $2,000 for the total destruction by fire of her home, situated in Searcy, under policy No. 7836346, insuring her in that sum against loss by fire on the dwelling and another suit for $400 damages for loss of furniture by fire under policy No. ......, insuring her against loss by fire upon household goods and furniture in the sum of $600.

The insurance company denied any liability to the plaintiff and alleged that she caused or procured the building to be burned, in order to recover the insurance; that the insured failed to give notice of the fire and furnish proof of loss within the sixty days provided by the policy, and alleged that the building was destroyed by fire while it was vacant and during the term of a vacancy permit, the terms of which she failed to observe in not keeping it closed and having it in the care and under the supervision of some person.

The answer to the suit for the loss of the furniture and household goods alleges that the plaintiff had information or knowledge that the house would be burned and before the fire removed all the household goods and furniture covered by the policy, except some of very little value. It denied that it had been furnished notice and proof of loss within the time required in the policy; alleged that it was forfeited because of the removal of the bulk of the furniture from the building without notice to the company and that the insured had failed to comply with the conditions of the vacancy permit.

The cases were consolidated and heard together and the jury returned the following verdict:

"We, the jury, find for the plaintiff in the sum of $2,000 for the house and nothing for the furniture.

(Signed)                "J. D. VanPelt, Foreman."

Judgment being rendered upon the verdict, the insurance company filed a motion for a new trial, which was granted by the court and the cause continued until the next term. Upon the trial the testimony adduced was substantially as follows: The house was totally destroyed by fire on the 12th of September, 1912, about dark or a little after. Mrs. Chunn had moved out of it about a month before and a vacancy permit was issued. She and Mrs. Phillips had driven over to the house in a buggy about 8 o'clock the evening of the fire. She testified that the house fronted west. There was a street running on the west and also on the north sides; that she had on account of sickness vacated the building about a month before the fire and intended to rent it out; that she had procured a vacancy permit and was looking after the house during the vacancy as best she could. On the evening of the fire she had driven over with Mrs. Phillips in the buggy with her. "We drove down there so that I might see about the light meter. I left the buggy and went around to the back of the house, but did not go in because it was too dark. I was not away from the buggy more than two minutes and left the house immediately. I was not well, and was driving a young skittish horse. The meter was on the back porch and that was the reason I went around to see if it was taken out. I was there about three days before, was sick and could not go oftener. I did not go to the fire when I heard the alarm because the horse was not safe. I did not know it was my building until I met my brother about six blocks away. I do not know how the fire originated. The house was fully wired with electric wires."

On cross-examination she testified: "The meter was on the north porch next to the street where we stopped the buggy. I went around the house because I

wanted to see if the telephone was taken out. It was in the back hall but it was so dark I could not see. I did not go on the porch at all. I was gone from the buggy about two minutes. I did not see any light in the house and there was no light in the house at all. We drove in a trot from the house directly to Spring park, which was about three blocks and, takes about four minutes by the watch. We stopped at the park gate. Mrs. Phillips got out to get her little girl. I told her to hurry, that I wanted to go home as quickly as I could because my sister was sick, I was there attending to her. I told her I did not want to go to the fire because it was not safe on account of the horse. We met my brother and Mr. Phillips at Monroe Street, and when they told us it was my house, Mrs. Phillips said it could not be, for we had just left there. The next day she and I went out to Sulphur Springs to get some water. We did not talk much about the fire that day. She told me about seeing the insurance man and I told her they would not see me and asked her where we were, because I did not exactly remember and wanted her to tell me where we were when we met George. That was several days after the fire. I thought I was going to collect this insurance and thought I would go West. That was the day after the fire.''

Witness denied asking Mrs. Phillips not to say anything about their having been at the house. ''After the fire I told Mrs. Phillips after we had gotten out of the buggy that people would talk about it if they knew we were down there, and I did not have anything to do with it, and thought it was best not to say anything about it.''

She admitted that most of the furniture had been taken out of the house by her direction, and some of it stored in the barn. Her husband was suing her for a divorce at the time of the fire.

Mrs. Phillips stated that Mrs. Chunn was living with her father and mother at the time of the fire in the west end of town and the house was in the east end. That Mrs. Chunn's brother lived across the street from witness and she knew that Mrs. Chunn had stored some of the furni-

ture at her brother's house, and had had some dressers, bedsteads and chairs carried to her father's, and also some mattresses. These things were moved a week or two before the fire. "I went driving with her the evening of the fire; it was just getting dark as we started, and the street lights were being turned on. We started from her brother's and drove through town to her sister's, Mrs. Julians, in the east end, where witness got out to look at the house, and then we drove to the house that burned, some little distance, to the side gate and stopped back of Mr. Green's barn. She said when we started driving, she wanted to go and see if the lights were turned on, and then again she said to see if her meter and telephone had been taken out. I sat in the buggy, and she went in the gate and around the house. She did not go on the porch on the north side, but around the house out of my sight, and was gone between five and ten minutes. I did not see any light, and could have seen a light if there had been one in the house. When she got out of the buggy, I said to her, 'You have certainly got your nerve.' She did not say anything, but walked on. When she returned and got in the buggy, she said, 'Whatever you do, don't tell George or anybody else that I came by this house or ever stopped here, that she would not have him know it for anything. George was her brother. We drove about three and a half blocks to the park; I got out to get my little girl, and as I walked back to the buggy, the fire alarm sounded, and she said, 'Hurry and get in this buggy, quick; I don't want to see any fire.' She turned at the northwest corner of the park, and when I saw the way she was going, I said, 'Let us go through town; it was much lighter.' She said, 'I don't want to go through town.' We drove up the back street four or five blocks and turned into Main, where we met my husband and her brother, who asked if she knew where the fire was, and she said, 'No,' and was told it was her house, and she told him to get in and go there quick. I said it could not be her house, as we had just come from there. She struck my arm and said, 'Now, you have told it already.' As

we went on down the street, she said, 'I might not get my insurance, anyway, because there was no one living in the house.'"

The testimony tended to show that most all the furniture had been removed from the building, and that the doors and windows had not been kept fastened, and that almost any one had easy access to the building. The fire was discovered immediately after Mrs. Chunn visited the place, and the alarm given after she had driven three or four blocks therefrom. The fire was first discovered around on the back side where Mrs. Chunn had gone when she left the buggy.

Mrs. Goff testified that she had boarded with Mrs. Chunn in the house that was burned and lived in it with her. She left there some time in January, 1912, and "a short time before leaving she told me to go with her to Mr. Lightle and take out a thousand dollars insurance on my furniture, and she would take out a thousand, and we would burn the place and go to California and enjoy it. I told her I would not do it; I did not want to burn my rugs and things, and she said, "I could send my things to my mother, and she could send her pictures and things to her brother's, and we could do it some night when the boys were away and nobody would know anything about it." After that I put all my clothing in my trunk, and put my trunk near the door, and told my husband if the house burned we could get the trunk and save what clothing we had. The reason I left I did not want to stay where I thought the house might burn. She said the reason she wanted to burn the house was that it was no good, the boarders had all left, and she would burn it because it was not worth what it was insured for, and she would have the land left. Mrs. Goff also stated that she told Mr. Shoffner and Mrs. Verser at the time, and before the fire, what Mrs. Chunn had said about burning the house. Several witnesses were introduced impeaching the reputation of Mrs. Goff.

On re-direct examination of Gus Shoffner by the defendant, the court allowed him to testify over appellant's

objection that Mrs. Goff had told him before the fire of her conversation with Mrs. Chunn about wanting her to insure her property, and they would burn the house to get the insurance. Mrs. Verser was also permitted, over appellant's objection, to testify that Mrs. Goff had told her of the conversation between her and Mrs. Chunn, wherein Mrs. Chunn had suggested that she have her furniture insured, as she had already had hers insured, and that they would burn the house and collect the insurance. This witness did not know whether Mrs. Goff told her of this conversation before or after the fire.

There was no proof of loss sent to the company within sixty days after the fire, but their agent was notified of it and the proof tended to show that the company denied liability. The court instructed the jury, giving, among others, instruction numbered 7, over appellant's objection, and also that they had nothing to do with any claim or suit for damages for loss of furniture in the fire, that claim having already been adjudicated at a previous trial. The jury returned a verdict in favor of the insurance company, and from the judgment this appeal is prosecuted.

*R. S. Coffman, J. N. Rachels* and *John E. Miller,* for appellant.

1. Counsel cite no authorities in support of their objections to instruction.

2. In holding and so instructing the jury that the issues joined in the suit upon the furniture policy had been adjudicated, the court erred. The suits were consolidated perviously and tried as one case, and one verdict and one judgment were rendered. When the court set aside this verdict and judgment, both cases were set and were standing for trial upon the docket. 5 Standard Proc. 276, and authorities cited.

3. The admission of the testimony of witnesses Shoffner and Mrs. Verser relative to statements made to them by Mrs. Goff was patent error, being purely hearsay, and an effort to bolster up indirectly the damaging

testimony of a witness who had been successfully impeached.   35 Ark. Law Rep. 407; 87 Ark. 288; 83 Ark. 331; 96 Ark. 171.

S. *Brundidge,* for appellee.

1.   Appellant could not have been prejudiced by instruction 7.   If appellant had copied the policy or a statement of the terms thereof in her abstract, it would appear that the instruction was given, not as relating to the policy covering the personal property, but as a part of the policy covering the building.   108 Ark. 327; 98 Ark. 259; 90 Ark. 524; 99 Ark. 226; 92 Ark. 6.

2.   Appellant can not complain now that the court orally charged the jury that the suit on the policy on the household goods had been adjudicated.   No objection was raised nor exception saved to it in the lower court.   101 Ark. 123; 83 Ark. 453; 95 Ark. 363.

3.   There was no error in the admission of testimony. If it be conceded that the testimony of Shoffner and Mrs. Verser was incompetent, nevertheless, the judgment, being right on the whole record, will not be reversed because of such incompetent testimony.   44 Ark. 559; 90 Ark. 524.

KIRBY, J., (after stating the facts).   (1)   It is insisted that the court erred in refusing to consolidate the cases at this trial on appellant's motion, and in instructing the jury that there was no claim for loss of personal property to be considered by them, that matter already having been adjudicated.   There was no error in this instruction.   The suits for loss under each of the policies had been consolidated in the first trial, and the jury returned a verdict in favor of appellant for the loss of the house and against her for the loss of the furniture and household effects and judgment was rendered accordingly.   The insurance company moved for a new trial which was granted as to it and the judgment set aside. The appellant made no motion for a new trial, and, of course, having had a verdict and judgment against her, and not having appealed from it, was bound thereby, the setting aside of the judgment against the insurance com-

pany not affecting the judgment against her in its favor.

(2)   The court erred, however, in permitting witnesses Shoffner and Mrs. Verser to testify about the statements made to them by Mrs. Goff, detailing the conversation had with Mrs. Chunn relative to the insurance of her property and the burning of the house to collect the insurance.   The question at issue was whether or not Mrs. Chunn had destroyed her own property by fire, and this testimony was incompetent and highly prejudicial. It was hearsay and inadmissible, not coming within any recognized exception to the general rule, and in effect was a strong corroboration of the testimony of Mrs. Goff who had been impeached by several witnesses relating her contradictory statements made on another occasion. *Burks* v. *State,* 78 Ark. 271.

Instruction numbered 7, containing a clause of the policy relating to the duty of the insured to protect the property after the fire from further damage, and to separate the damaged and undamaged personal property, the taking care of it after the fire and the furnishing of an inventory thereof stating the quantity and cost of each article and the amount of claim thereon, etc., within sixty days after the fire, signed and sworn to, should not have been given, the court having instructed the jury that there was no issue relative to the loss of the personal property to be tried by it.   If appellant desired the jury instructed relative to the matters contained in the instruction after the said clause, it could have been done without including it, and its effect was confusing to the jury.   This error should have been reached by specific objection, however, and the case would not have been reversed because of it, none having been made.

We have not examined all the instructions with a view to ascertaining their correctness, since for the error committed in permitting the introduction of incompetent testimony already pointed out, the case must be reversed and will be remanded for a new trial.   It is so ordered.